UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERALD STABILE<br><br>Plaintiff,<br><br>v.<br><br>SGT. EDWARD CONKLIN, OFFICER SCOTT BAKER, OFFICER GUY BOCCARDI, OFFICER MARCO FERNANDEZ, JOHN DOES 1-30, Fictitious Individuals, ABC CORPS 1-30, Fictitious Corps, Jointly and Severally, Official and Individual Capacities,<br><br>Defendants. | Civ. No. 2:20-cv-02205 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action for excessive use of force is a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendants Sgt. Edward Conklin and Officers Scott Baker, Guy Boccardi, and Marc Fernandez ("Defendants"). ECF No. 49. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion for summary judgment is **granted in part and denied in part.**

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Gerald Stabile ("Plaintiff" or "Stabile") is a gay man who is HIV positive. *See* Pl.'s Opp'n Br., at 1. On January 18, 2018, Plaintiff traveled to Sonesta Suites Hotel in Parsippany, New Jersey ("Hotel") to visit his friend Ottillie Lee and her daughter Casey, who were prostituting at the time and living at the Hotel. Def. Statement of Uncontraverted [sic] Material Facts ("Def. SUMF"), ¶ 2. The following day, Jose Dominguez arrived at the Hotel room and displayed a plastic baggie containing bullets and a pistol, which caused Plaintiff to have a panic attack. *Id.* at ¶¶ 3, 5, 6. Subsequently, Plaintiff called 911 to report the gun and his panic attack. *Id.* at ¶ 13.

Plaintiff proceeded to the Hotel lobby to use the desk phone to call his family. *Id.* at ¶ 14. While speaking to his mother on the telephone, his anxiety increased and he began crying hysterically. *Id.* at ¶ 17. In that time, Plaintiff was asked at least once by one or more desk clerks to get off the phone. *Id.* at ¶ 18; Pl. Dep. attached as Ex. E to Certification of Alan J. Baratz ("Defs. Cert."), at 56:15-21, 57:6-11. Officers had arrived by then and told

Plaintiff about four times to hang up the phone. *Id.* at ¶ 20. Defendants claim Plaintiff was using profanity, harassing a hotel staff member, and also spat in Officer Fernandez's face, which Plaintiff denies. *Id.* at ¶¶ 38, 42, 43, 48, 49. When Plaintiff refused to comply, Officer Baker came up behind him and handcuffed his left wrist. *Id.* at ¶¶ 22, 51. Although Plaintiff knew an officer was trying to arrest him, he "applied force against [an officer's] leg" and later pled guilty to resisting arrest in the third degree. *Id.* at ¶¶ 25-26. In response to Plaintiff's conduct in resisting arrest, Defendants utilized a "leg sweep" and took Plaintiff to the floor in about five or six seconds. *Id.* at ¶¶ 27-29, 53. Plaintiff does not know how many officers were in physical contact with him when he hit the floor, but recalls Fernandez was holding Plaintiff's left arm, Baker was holding his right arm, and Conklin also had one of his arms. *Id.* at ¶ 28; Pl.'s "Reply to Statement of Facts," ("Reply Stmt."), at ¶ 28. Plaintiff sustained injuries including multiple comminuted nasal fractures. *Id.* at ¶ 29; St. Clare's Hospital January 19, 2018 Emergency Room Record attached as Ex. K to Defs. Cert., at 39.

Once Plaintiff was on the floor, officers completed his handcuffing. *Id.* at ¶ 55. Plaintiff continued to fight and flail around in his own blood, and according to Defendants, also gathered mouthfuls of blood from the floor attempting to spit his blood on the officers, yelling that he was HIV positive and hoped officers would get AIDS and die. *Id.* at ¶¶ 55, 56, 58. Conklin instructed Officer Boccardi to zip tie Plaintiff's feet. *Id.* at ¶ 55. Plaintiff was repositioned out of his blood puddle, which resulted in his face hitting the ground again. *Id.* at ¶ 59. Blood and urine tests performed at St. Clare's Emergency Department following Plaintiff's arrest on January 19, 2018 detected benzodiazepine, amphetamine, cocaine, cannabinoid, alcohol, and other drugs in his system. *Id.* at ¶ 10; Ex. K at 38, 39.

Plaintiff filed suit against Defendants, who are officers of the Township of Parsippany-Troy Hills Police Department ("PPD"), John Does 1-30 (Fictitious Individuals), and ABC Corps 1-30 (Fictitious Corps) for injuries he sustained during his arrest in violation of the Fourth and Fourteenth Amendments. Plaintiff alleges excessive force (Count One), failure to intervene (Count Two), supervisory liability (Count Three), and civil conspiracy (Count Six) pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") (Count Four), as well as negligence under the New Jersey Tort Claims Act (Count Five). In seeking summary judgment, Defendants argue that they are entitled to qualified immunity on all the claims and that absent liability on the underlying wrongs, the civil conspiracy claim must also be dismissed.

## II.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby,*

2

*Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). In other words, "unsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249). In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).[1]

## III. DISCUSSION

Under the theory of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Monticciolo v. Robertson*, No. 15-8134, 2017 WL 4536119, at *18, n. 14 (D.N.J. Oct. 11, 2017) ("courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983." (internal citation, and quotes omitted)). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Qualified immunity encompasses mistaken judgments that are not plainly incompetent. *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005).

### A. Excessive Force

---

[1] The Court will not consider Plaintiff's "Counter Statement of Facts" as it is a 293-paragraph recitation of deposition testimony and expert opinion rather than a statement of undisputed facts contemplated under Local Rule 56.1.

Defendants concede that the right to be free from physical force when not resisting arrest was a clearly established right at the time of the January 19th arrest. Thus, the Court need only decide whether Plaintiff has alleged facts that support a reasonable jury finding that in effectuating arrest, Defendants used excessive force in violation of Plaintiff's Fourth Amendment rights. *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009). "Reasonableness under the Fourth Amendment should frequently remain a question for the jury." *Kopec v. Tate,* 361 F.3d 772, 777 (3d Cir. 2004) (internal quotes and citation omitted). However, a defendant may still win on summary judgment if after all inferences are drawn in favor of the nonmoving party "to the extent supportable by the record," *Scott v. Harris,* 550 U.S. 372, 381, n.8 (2007), an officer's use of force was objectively reasonable under the circumstances. *Kopec,* 361 F.3d at 777.

The reasonableness inquiry should give appropriate scope to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)). The officer's use of force is measured by "careful attention to the facts and circumstances of each particular case," *id.* (citing *Graham,* 490 U.S. at 396), and "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Kopec,* 361 F.3d at 777 (citing *Graham,* 490 U.S. at 396-97). Factors to consider include: "'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Lombardo v. City of St. Louis, Missouri,* 141 S. Ct. 2239, 2241 (2021) (citing *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015)). Other considerations may be the duration of the action, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Kopec,* 361 F.3d at 777.

In this case, genuine issues of fact exist as to the factors material to the reasonableness inquiry, such as whether: 1) Plaintiff spat in Officer Fernandez's face and was harassing a Hotel staff member; 2) Plaintiff's conduct in resisting arrest warranted a leg sweep; 3) Defendants reasonably perceived Plaintiff as a threat since he had not been patted down for weapons and a gun and bullets had been retrieved from one of the Hotel rooms; and 4) Plaintiff was gathering mouthfuls of blood from the floor attempting to spit his blood on the officers. Resolving all such factual disputes in Plaintiff's favor, triable issues of fact exist regarding whether under the totality of the circumstances, Defendants' use of force in effectuating arrest was objectively reasonable. Summary judgment based on qualified immunity as to the excessive force claim under §1983 and NJCRA is **denied** as to each of the four Defendant officers.[2]

---

[2] Denying qualified immunity at summary judgment requires courts to "analyze separately, and state findings with respect to, the specific conduct of each defendant." *Dean v. Borough of Glassboro,* No. 21-2468, 2023 WL 2597586, at *3 (3d Cir. Mar. 22, 2023) (citing *Williams v. City of York,* 967 F.3d 252, 257 (3d Cir. 2020)). Genuine issues of

B. Failure to Intervene

In a failure to intervene claim, a "police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, but only if there is a realistic and reasonable opportunity to intervene." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (internal quotes and citation omitted)). While "the duration of the incident is key to determining whether there was a reasonable opportunity," the relevant inquiry is not whether officers had an opportunity to intervene in the "entire incident," but in the "use of force." *Id.* at 335-36. Although Plaintiff testified at his deposition that his initial take down occurred in about five or six seconds. *See* Def. SUMF, ¶ 27, Defendants have not presented any evidence as to the duration of any alleged remaining use of force. Moreover, given that factual disputes exist regarding the underlying excessive force claim, summary judgment is **denied** on the failure to intervene claim.

C. Supervisory Liability

One theory under which a supervisor may be personally liable under § 1983 for a subordinate's unconstitutional acts is "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). As evidence of a failure to supervise, Plaintiff argues in his opposition brief that Sgt. Conklin failed to ensure that body worn microphone recordings were "secured in place and evidence" or to take photographs of Plaintiff's injuries. *See* Pl.'s Opp'n Br. at 24-25. Failure to secure evidence is insufficient to permit inference of participation in, the directing of others, or acquiescence in the use of excessive force. However, testimony that Conklin had one of Plaintiff's arms during the take down is sufficient for a jury to find supervisory liability. Moreover, since supervisory liability depends on whether those who were supposedly directed to violate Plaintiff's rights actually did so, summary judgment on the supervisory liability claim is **denied**. *See e.g., Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).

In contrast, any attempt by Plaintiff to invoke a second theory of supervisory liability necessarily fails. Plaintiff argues for the first time in his opposition brief that Sgt. Conklin failed to train his subordinates and that his failure to take photographs and secure evidence shows deliberate indifference to Plaintiff's constitutional harms. *See* Pl.'s Opp'n Br. at 24-25. Supervisory liability may attach where the official "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)); *Neals v.*

---

fact exist as to whether Defendants Conklin, Baker, and Fernandez, by taking Plaintiff down and holding his arm and/or performing the leg sweep, used excessive force. *See supra.* Whether Officer Boccardi was even present at that time is a disputed fact material to his participation. *Compare* Baker Tr. at 16:11-23 *with* Conklin Tr. at 71:8-72:7.

5

*Stromberg*, No. 16-7141, 2020 WL 5088226, at *16 (D.N.J. Aug. 28, 2020) ("failure to train" claims are generally considered subcategory of "policy or practice liability"). However, the Complaint does not allege that Conklin, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom that caused the use of excessive force. *See Waugaman v. City of Greensburg*, 841 F. App'x 429, 433 (3d Cir. 2021) (noting that plaintiff may not amend complaint through arguments in brief in opposition to summary judgment motion). Thus, the only theory of supervisory liability Plaintiff may pursue is the one he has pled. *See e.g.,* Compl., ¶ 37 (alleging knowledge and acquiescence). Even if Plaintiff had alleged this other theory of liability in his Complaint, the failure to take photographs or secure evidence does not show deliberate indifference to a substantial *risk* of the use of excessive force since the alleged violation had already occurred. *See A.M. ex rel. J.M.K.*, 372 F.3d at 587 (noting deliberate indifference standard "requires evidence that the Defendants were deliberately indifferent to a substantial risk of harm to [Plaintiff] and did nothing to prevent it.").

### D. Negligence and Civil Conspiracy

Defendants move for summary judgment based on qualified immunity under the Tort Claims Act, N.J.S.A. § 59:3-3, which states: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law." Often, "good faith" is a question of fact, but summary judgment under § 3-3 "is appropriate if public employees can establish that their acts were objectively reasonable or that they performed them with subjective good faith." *Canico v. Hurtado*, 144 N.J. 361, 365 (1996). Because genuine issues of material fact exist as to whether Defendants' conduct in effectuating Plaintiff's arrest was reasonable, *see supra,* Defendants' motion for summary judgment on the negligence claim is denied.

Lastly, to the extent that summary judgment is denied on the predicate allegations of wrongdoing, Defendants' motion for summary judgment of Plaintiff's civil conspiracy claim is also **denied**.

### IV.  CONCLUSION

For the reasons noted above, summary judgment in favor of Defendants is **granted in part and denied in part**.

_____
WILLIAM J. MARTINI, U.S.D.J.

Dated: Aug. 22, 2023

6